Minute Order Form (rev. 12/90)

# UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | ROBERT W. GETTLEMAN | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 99 C 3766 | Date | January 12, 2001 |
| Case Title | Duchossis Industries  v  Crawford & Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [use listing in "MOTION" box above]
(2) ☐ Brief in support of motion due _____
(3) ☐ Answer brief to motion due _____ Reply to answer brief due _____
(4) ☐ Ruling/Hearing on _____ set for _____ at _____
(5) ✓ Status hearing ☐ held ☐ continued to ✓ set for ☐ re-set for 2/14/01 at 9:00
(6) ☐ Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____
(7) ☐ Trial ☐ Set for ☐ re-set for _____ at _____
(8) ☐ Bench Trial ☐ Jury Trial ☐ Hearing held and continued to _____ at _____
(9) ☐ This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to
   ☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)
(10) ✓ [Other docket entry] Memorandum Opinion and order entered. Accordingly, the cross motions for summary judgment are denied. Final pretrial order is due by 2/13/01.
(11) ✓ [For further detail see ☐ order on the reverse of ✓ order attached to the original minute order form.]

☐ No notices required, advised in open court.
☐ No notices required.
✓ Notices mailed by judge's staff.
☐ Notified counsel by telephone.
☐ Docketing to mail notices.
☐ Mail AO 450 form.
☐ Copy to judge/magistrate Judge.

date docketed: JAN 19 2001

Document # 44

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DUCHOSSOIS INDUSTRIES, INC. and )
CHAMBERLAIN MANUFACTURING CO., a )
wholly owned subsidiary of DUCHOSSOIS )
INDUSTRIES, INC. )
)
Plaintiffs, )
) No. 99 C 3766
v. )
) Judge Robert W. Gettleman
CRAWFORD & COMPANY, )
)
Defendant. )

DOCKETED
JAN 1 9 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff Duchossois Industries, Inc. and its wholly owned subsidiary Chamberlain Manufacturing Co. (jointly as plaintiff), have sued defendant Crawford & Company in a two count amended complaint alleging breach of contract and a violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, ("Consumer Fraud Act") 815 ILCS 504/2 et seq. Defendant has moved for summary judgment on both counts, to which plaintiff has responded and filed a cross-motion for summary judgment. For the reasons set forth below both motions are denied.

### Discussion

Initially, the court notes that neither party has bothered to include a factual description of the case in their legal memoranda, electing (improperly) instead to incorporate their L.R. 56.1 statements of undisputed facts. Counsel obviously fail to understand the purpose of L.R. 56. L.R. 56.1 statements are not intended to be substitutes for a statement of facts section of a

memorandum of law. Rather, their purpose is to assist the court in identifying those material, uncontested facts in the record that entitle the movant to judgment. See Ford v. Lumbermen's Mutual Casualty Co., 197 F.R.D. 365 (N.D. Ill. 2000).

The distinction between an L.R. 56.1 statement and a statement of facts section of a legal memorandum is highlighted by the instant case. The L.R. 56 statements submitted by the parties appear to be limited properly to the facts material to the motions. They do not, however, (again properly) provide a simple description of the underlying events. The briefs submitted by the parties assume that the court is as familiar with the underlying events as are the authors, jumping right into legal argument without even an introductory paragraph to explain the case. Rather than enlightening the court, the briefs have served only to confuse, focusing entirely on the narrow legal disputes between the parties without providing sufficient background information to determine the import of those disputes. After reviewing the briefs and the L.R. 56.1 statements, the court is left with uncertainty as to what actually transpired. It may well be that the parties are sure of, and in complete agreement, as to what happened. The court, however, is not. Under such circumstances, summary judgment under Fed. R. Civ. P. 56 is inappropriate.

That being said, there are certain legal issues between the parties that can be resolved based on the facts as the court knows them. In November 1985 plaintiff entered into a contract with the defendant pursuant to which defendant was to act as plaintiff's third party claim adjuster for worker's compensation claims in Pennsylvania and Massachusetts. Plaintiff was self insured up to $150,000 and had excess insurance for claims above that amount. Pursuant to the contract, defendant was to:

2

A.  Receive all claims and/or loss reports with claim and/or loss dates incurred during the term of this contract, involving the here and above stated exposures to the "Client."

B.  To investigate, to the extent deemed necessary in the judgment of the "Client" all reported claims and/or losses as defined in Section I. A., above.

\* \* \*

D.  To investigate, adjust, settle or resist all such losses and/or claims as defined in Section I. A. with specific prior approval of the "Client."

E.  To furnish all claim forms necessary for proper claims administration.

F.  To establish claims and/or loss files for each reported claim and/or loss. (Claim and/or loss files are subject to review by the "Client" at any reasonable time, without prior notification.)

G.  To retain and then ship to "Client" claim and/or loss files for each reported claim and/or loss in accordance with the File Retention and Destruction Policy, marked Exhibit A, attached hereto and made a part hereof.

H.  To furnish the "Client" with monthly loss run, monthly loss fund activity and quarterly loss cause analysis claims statistical information from the "servicing company's" SISDAT Department.

\* \* \*

It is undisputed that the terms of the contract did not explicitly require defendant to notify plaintiff, the excess insurance carrier, or anyone else when a claim exceeded $150,000.

Prior to November 1985, Alexis Risk Management Services, Inc., acted as plaintiff's claim administrator. In November of 1985, Alexis transferred to defendant its claim files relating to plaintiff. Among those files transferred were the claim files of Jose N. Garcia and Jose L. Garcia. Apparently, at some point, either when defendant received the files, or sometime later, it applied $62,094.75 to the Jose L. Garcia file instead of the Jose N. Garcia file.[1] According to

---

[1] Apparently, because although the parties' briefs refer to Jose L. and Jose N. Garcia, some of defendant's supporting materials indicate that the $62,094.75 should have been credited to the

plaintiff, defendant settled the Jose N. Garcia claim in March 1993, listing the total paid as $161,541.13. It did not include the amounts incorrectly listed in the Jose L. Garcia file. The Jose L. Garcia claim was allegedly settled in 1998 with an actual total amount paid of $217,821.75.

In Count I for breach of contract, plaintiff alleges that defendant had a duty to report any claim paid in excess of $150,000 directly to the excess insurance carrier, or at least to plaintiff. Plaintiff acknowledges that the contract does not explicitly require such notification, but argues that the duty should be implied pursuant to National Surety v. First Motor Services, 213 Ill. App.3d 500 (1st Dist. 1991). In National Surety, a worker's compensation insurer brought a breach of contract and an account stated action against the insured. The insured counterclaimed for breach of contract against the insurer. The jury found for the insured, and on appeal the court held that an insured can state a cause of action for breach of an insurer's implied duty of good faith, based on the insurer's failure to act reasonably when adjusting claims under a policy that contained a retrospective premium feature, even though the policy contained no express provision imposing such a duty. The court's reasoning was based entirely on the fact that the policy contained a retrospective premium feature, meaning that the insurer's failure to act reasonably when adjusting claims "automatically subjected the insured to greater financial obligations in the form of increased premium rates." Id. at 505. The instant case, however, does not involve a policy containing a retrospective premium feature. The amount paid by plaintiff to

---

Joseph Garcia file. It is therefore unclear whether there is one Garcia, two Garcias, three Garcias or perhaps more.

4

defendant under the contract is not dependent on the manner in which claims are adjusted. Thus, the reasoning of <u>National Surety</u> is inapplicable.

Moreover, even if a duty to report could otherwise be implied (which it cannot), the contract in question specifically excludes it. Section III. E. of the contract specifically provides:

> No periodic reports or reports on the status of individual claims and/or loss files, other than as provided in Section I. E., I. F., and I. G., are required from the "Servicing Company" except as may be mutually agreed to on an individual claim and/or loss file basis.

The fact that defendant had no specific duty to report claims over $150,000 does not, however, mean that defendant is entitled to summary judgment on Count I. The contract did require reports and loss runs to be provided, and plaintiff alleges that defendant breached the contract by failing to do so accurately. Whether plaintiff is correct, and whether it suffered damages as a result are contested facts. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

In Count II, plaintiff alleges that defendant violated the Consumer Fraud Act when it failed to disclose the misapplication of payments to the Jose L. Garcia file after defendant learned of it on February 20, 1991. Plaintiff alleges that defendant intentionally concealed the misapplication while it continued to act as plaintiff's third party administrator. Defendant argues that attempts such as plaintiff's, to turn a simple isolated breach of contract claim into a consumer fraud action, has been rejected by the Illinois courts for failing to implicate consumer protection concerns. In essence, defendant argues that plaintiff's claim fails the "consumer nexus test," which provides that "when a claim under the Consumer Fraud Act is premised upon a breach of contract, a party must allege some nexus between the complained of conduct and consumer protection concerns; furthermore, the complaining party also bears the burden to prove,

5

by clear and convincing evidence, how the complained-of conduct implicates consumer protection concerns." Brody v. Finch University of Health Sciences, 289 Ill. App. 3d 146, 160 (2d Dist. 1998) (citing Lake County Grating Co. of Libertyville, Inc. v. Advanced Mechanical Contractors, Inc., 275 Ill. App. 3d 452 (2d 1995)).

As Judge Plunkett recently noted, however, it is not clear that the consumer protection nexus is required in all Consumer Fraud Act cases involving a breach of contract. "Though the Illinois Supreme Court has yet to address the issue, the state appellate court decision suggests that a nexus to consumer protection is required only if the plaintiff is not a 'consumer' as defined by the Act." Anchor Mortgage Corp. v. Certified Credit Reporting, Inc., 2000 WL 1700147 (N.D. Ill. Nov. 8, 2000). This court agrees with Judge Plunkett's analysis of the case law and his conclusion that the consumer nexus test is applicable only when the plaintiff is not a consumer under the terms of the Act. See Peter v. Stone Park Enterprises, L.L.C., 1999 WL 543210 at *6 (N.D. Ill. July 23, 1999) ("to have standing to sue as a non-consumer, plaintiff must meet the consumer nexus test . . . .").

In the instant case, plaintiff purchased defendant's services for its own use, not for "resale in the ordinary course of [its] trade or business . . .." 815 ILCS 505/1(c). Accordingly, because the court concludes that plaintiff does not have to prove a "consumer nexus," defendant's motion for summary judgment on Count II is denied.[2]

---

[2]Defendant's remaining argument, that plaintiff's claim is barred by the statute of limitations, was rejected by this court in its August 13, 1999, order denying defendant's motion to dismiss.

## Conclusion

For the reasons set forth above, the cross motions for summary judgment are denied. The parties are ordered to file a final pretrial order on or before February 13, 2001. This matter is set for a report on status on February 14, 2001, at 9:00 a.m.

ENTER: January 12, 2001

*(signature)*
Robert W. Gettleman
United States District Judge